UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOLECULAR DYNAMICS LTD.,

                                    Plaintiff,

                    -v-

SPECTRUM DYNAMICS MEDICAL LIMITED, et al.,

                                    Defendants.

22 Civ. 4332 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On June 10, 2022, the Court granted the motion of plaintiff Molecular Dynamics Ltd.

("MD") for a preliminary injunction against defendants Spectrum Dynamics Medical Limited

("Spectrum") and Biosensors International Group Ltd. ("Biosensors"). It enjoined them from

enforcing an arbitral award against MD outside of New York, based on a forum selection clause

in one of a suite of four agreements that the parties had signed.[1] *See* Dkt. 37. The preliminary

injunction was granted subject to further briefing by the parties. The Court directed defendants

to file briefs in opposition to the continuation of the preliminary injunction within two weeks,

and MD to respond. *See id.*

On June 24, 2022, defendants timely filed their briefs in opposition to the continuation of

the preliminary injunction, and a supporting declaration. Dkts. 46 ("Spectrum Opp."), 47 ("Hall

Taylor Decl."), 48 ("Biosensors Opp."). On July 8, 2022, MD responded. Dkt. 52 ("MD

Resp."). Because the Court finds that the doctrine of judicial estoppel would likely bar MD's

claims, the Court dissolves the preliminary injunction.

---

[1] The same day, the Court denied MD's motion to remand the case to state court. *See* Dkt. 37.
That decision is not at issue here.

## I.       Relevant Background and Procedural History[2]

This action arises from MD's loss in an arbitration in Switzerland in which its adversaries were the two corporate defendants here.

On October 15, 2013, the parties and other entities entered into a set, or as the parties have referred to it, a "suite," of four contracts.  Biosensors Mem. at 6, 8.  One of them, the "License Agreement," stated, in Section 9, that "on matters of [*sic*] concerning the Chosen Arbitration, the courts of New York, New York will have exclusive jurisdiction thereupon."  MD Mem. at 3.  Three other agreements were also signed; the parties to those included Chauncey Capital Corp. ("Chauncey") and SDBM, Ltd. ("SDBM"), which controlled MD.  *See* Biosensors Mem. at 8–12.

In 2018, Spectrum brought an arbitration against MD, SDBM, and Chauncey.  *Id.* at 7.  On July 31, 2019, during the arbitration, MD, Chauncey, and SDBM obtained an *ex parte* interim freezing order of Spectrum's assets, pending the award from the tribunal, on the ground that Spectrum would dissipate its assets.  Spectrum Opp. at 3.  On April 8, 2020, the order was vacated.  *Id.* at 7; Spectrum Mem. at 7.  That proceeding is what gives rise to defendants' assertion of judicial estoppel here.

On May 18, 2022, the arbitral panel issued its award, finding largely in favor of the defendants here (the "Award").  Spectrum Mem. at 2–3.  As of May 22, 2022, the total amount that MD owed on the Award was $11,243,178.  Biosensors Mem. at 16.

On May 25, 2022, MD filed for a temporary restraining order ("TRO") in New York State court seeking emergency relief to prevent one or both defendants from initiating judicial

---

[2] The facts here are drawn from MD's memorandum of law in support of a temporary restraining order and preliminary injunction, Dkt. 8 ("MD Mem."), Biosensors's brief in opposition, Dkt. 17 ("Biosensors Mem."), and Spectrum's brief in opposition, Dkt. 22 ("Spectrum Mem.").

proceedings outside New York, presumably to confirm the arbitral award. The next day, Spectrum and Biosensors removed the action to this Court, a few minutes before the TRO hearing set in state court. *See* Dkt. 1.

On May 27, 2022, MD sought, and this Court granted, a TRO. Dkt. 12. The TRO as sought and granted enjoined defendants from initiating or continuing any judicial proceeding concerning the arbitration, including proceedings to recognize, confirm, or enforce the award, other than in the courts of New York. The Court did so based on MD's showing that the License Agreement explicitly gives the New York courts exclusive jurisdiction over any matters concerning the arbitration. On that basis, the Court found, MD was likely to succeed on the merits of its claim that a confirmation proceeding outside of New York would breach MD's contractual rights. The Court also found that MD would likely suffer irreparable harm were defendants to pursue enforcement of the arbitral award elsewhere; and that the balance of the equities also favored entry of the TRO. *See id.* On June 10, 2022, the Court granted MD's motion for a preliminary injunction, pending reassessment following further briefing. Dkt. 37; *see* Dkt. 40 (transcript). As the transcript of the bench ruling reflects, the Court distinguished between proceedings to confirm or enforce the Award, which it concluded were likely covered by the forum selection clause, and proceedings to enforce a court judgment arising from confirmation of the Award, which likely were not.

## II.    Discussion

"The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984)). Defendants make two arguments against the continuation of the preliminary injunction as it currently stands.

First, they argue that MD is judicially estopped from pursuing the argument it successfully made here, based on the forum selection clause. Second, they argue that, based on the parties' agreements, the Court should modify and clarify the injunction to apply only to MD, and not to other parties to the suite of agreements—namely, SDBM and Chauncey. Finding the first argument persuasive, the Court need not consider the second.

In this Circuit, judicial estoppel typically applies where: (1) "a party's later position is clearly inconsistent with its earlier position"; (2) "the party's former position has been adopted in some way by the court in the earlier proceeding"; and (3) "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Penberthy v. Chickering*, No. 15 Civ. 7613 (PAE), 2017 WL 176312, at *7 (S.D.N.Y. Jan. 13, 2017) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citation omitted)). The Supreme Court has stated that, "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). The Second Circuit further limits judicial estoppel "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa*, 595 F.3d at 103 (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005)); *see Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 104 (S.D.N.Y. 2020).

Here, defendants argue that they are entitled to judicial estoppel based on a position MD took before a court in the British Virgin Islands (the "BVI court") in the course of its successful

mid-arbitration application for an *ex parte* freezing order of Spectrum's assets.[3]  According to

defendants, MD sought and received emergency relief on the explicit premise that an arbitral

award in MD's favor would be enforceable in the BVI.  Spectrum Opp. at 1.  As defendants

explain, MD's brief in the BVI court in support of a freeze of its adversary's assets cited three

provisions of law: first, a section of the British Virgin Islands Arbitration Act that allows interim

relief "only if" "the proceedings are capable of giving rise to an arbitral award . . . that may be

enforced in the Virgin Islands," Hall Taylor Decl., Ex. 1, Virgin Islands Arbitration Act, 2013

("BVI Arb. Act") § 43(5) ("Section 43"); second, part 17 of the Eastern Caribbean Civil

Procedure Rules 2000, which sets out the procedures for a grant of interim relief; and third,

Section 24 of the West Indies Associated States Supreme Court (Virgin Islands) Act Cap 80

("Cap 80"), which grants the BVI court inherent jurisdiction to grant injunctive relief, subject to

satisfying a three-part test.  Spectrum Opp. at 5–6; Hall Taylor Decl. ¶¶ 4, 8.  Defendants argue

that only the first and third provisions—Section 43 and Cap 80—provide a basis for jurisdiction;

that, on the record of the proceedings before the BVI court, MD's bid for injunctive relief only

on Section 43, and not Cap 80; and that the BVI court, in adopting MD's position, granted

interim injunctive relief on that ground.  Defendants further argue that MD's position estops it

---

[3] MD objects to this argument as an uninvited sur-reply or motion to reconsider the Court's
previous ruling because defendants had briefly raised a judicial estoppel argument in their
previous briefing.  MD Resp. at 13.  That argument is unpersuasive.  The Court did not bar fuller
briefing on issues already raised.  *See* Dkt. 40 ("Tr.") at 16 ("I note, however, that this briefing
took place on short notice.  Therefore, I want to give the parties, and particularly defendants,
another crack at briefing this matter, in particular, . . . to try to show that the arbitral award was
based on other agreements to the exclusion of the license agreement.").  Spectrum's judicial
estoppel argument was addressed in less than two pages of its opposition to the TRO, which, of
necessity, was briefed with dispatch.  *See* Spectrum Mem. at 8–10.  And the Court explicitly
invited defendants to submit more briefing, given the complex nature of the matter and the
TRO's accelerated briefing timeline.  *See also* Tr. at 23 (inviting briefing on question whether
Chauncey and SDBM were subject to the preliminary injunction, "which has not been a focus of
anybody's briefing").

from arguing here—as it did in seeking a preliminary injunction on initiating arbitral proceedings outside New York—that the award can be enforced *only* in New York. That is because, defendants argue, in the BVI court, MD made, and succeeded, on the contrary argument that the award would be enforceable in the British Virgin Islands.

Defendants' argument is persuasive.

MD cannot, and does not, seriously contest that its current position—that the arbitral award can be enforced only in New York—is inconsistent with its argument before the BVI court that it was entitled to an *ex parte* freezing order of Spectrum's assets on the premise that the award would be enforceable there. *Compare, e.g.*, MD Mem. at 6 (describing "reasonably founded fear that defendants would imminently seek recognition, confirmation, *and enforcement* [of the award] outside of New York, in contravention of a New York forum selection clause"), 7 ("the plain text of Section 9 [of the License Agreement] applies to any efforts by defendants to recognize, confirm *and enforce* the Award outside New York") (emphases added), *with* MD Resp. at 19 ("MD argued in the BVI court that the Award would be 'enforceable' in the BVI to support the court's jurisdiction to issue the freezing injunction under Section 43[.]").

MD instead makes several counterarguments. None carries the day.

MD first tries to recast its position before this Court. It argues that, in bringing this action, its position was solely that "any action to recognize and confirm the Award must occur in New York courts first, after which a New York judgment can be 'enforced' elsewhere, including in the BVI." MD Resp. at 19. That legal position is logically tenable, and indeed persuasive, based on the forum selection clause, as this Court's bench ruling analyzing the forum selection clause reflects. But MD went beyond that. As its moving papers before the Court reflect, MD also took the position that any attempt to enforce the award (as opposed to a follow-on judgment)

outside New York was also precluded by the forum selection clause. This Court was persuaded by that reading of the forum selection clause, and the preliminary injunction the Court issued barred defendants from bringing any proceedings elsewhere to enforce the *award*. But that dimension of MD's advocacy here, even if well-anchored in the forum selection clause, is, unavoidably, in conflict with MD's earlier representation before the BVI court. There, it obtained consequential injunctive relief—a freeze on its adversary's assets—on the premise and representation that the award could be enforced in the BVI, as was required to empower the BVI court to grant such relief.

MD next faults defendants for not citing any provision of Section 43 under which an arbitral award would be unenforceable in the BVI without having first been converted to a judgment. *See id.* But that point is nonresponsive to the issue at hand. Section 43, under which MD sought and for eight months secured a freeze of its adversary's assets, states that an interim measure may be granted only if the arbitral proceedings are capable of giving rise to an award that may be enforced in the BVI. *See* Hall Taylor Decl. ¶ 6; *see id.* Ex. 2 ¶ 11 (BVI decision stating that "[t]here is no dispute that the ICDR Tribunal is capable of giving rise to an enforceable award in this Territory, so section 43(5) is satisfied."). That the arbitral proceedings were capable of doing so was the basis on which MD secured this relief in the BVI. But defendants' basis for claiming judicial estoppel is different. Defendants' point is that before this Court, MD has contended that the contractual forum selection clause between the parties here trumps Section 43, and that under that clause, an award—as opposed to a follow-on judgment— is enforceable only in New York.

MD next argues that defendants cannot prove that the BVI court relied on MD's claim in the BVI—inconsistent with its current position—that an arbitral award would be enforceable in

the BVI. On this prong of judicial estoppel, "the relevant question is whether a 'party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Lia v. Saporito*, 541 F. App'x 71, 74 (2d Cir. 2013) (summary order) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010)) (emphasis omitted). "[T]he former position of the party against whom estoppel is sought need not have been the '"but for" cause' of the earlier court's determination, so long as allowing that party to change positions would yield some unfair burden or benefit." *Penberthy*, 2017 WL 176312, at *7 (quoting *Lia*, 541 F. App'x at 74).

Although BVI court did not leave a conclusive record as to its reasoning on this point, the Court finds that this element, too, favors defendants. If MD's argument under Section 43 were the basis for the BVI court's pre-arbitration ruling freezing Spectrum's assets, then the reliance element necessarily was proven. MD argues that because it cited Cap 80 in its moving papers as an alternative basis for jurisdiction to Section 43, and because the order granting the injunction did not affirmatively state the court's basis for finding jurisdiction, defendants cannot show that MD's inconsistent position was adopted by the court. MD Resp. at 17.

The record, however, makes the inference far stronger that the BVI court relied on MD's argument under Section 43 than that it did not. In particular, as the transcript of the *ex parte* hearing preceding the grant of relief to MD shows, the colloquy between counsel for MD and the BVI court was focused on jurisdiction under Section 43. *See* Hall Taylor Decl., Ex. 5 ("BVI Tr."). The BVI court repeatedly asked MD's counsel why it, rather than the arbitral panel, should grant the injunctive relief MD sought. And repeatedly, in response, MD invoked Section 43 as the BVI court's basis for jurisdiction. Indeed, at the outset, counsel for MD stated: "This is

8

an application under section 43 of the Arbitration Act." *Id.* at 5. MD's counsel pointed the BVI

court to "one case that's helpful in the BVI that deals with applications of this nature, Section 43,

Arbitration Act, Interim Measures." *Id.* at 12; *see id.* at 13 (explaining that counsel was pointing

the court to that case "to draw out the principles in relation to section 43 applications"). Counsel

then quoted from that case, which stated: "There is no doubt that section 43 . . . is very wide in

its scope," and noted, "I'm just simply setting out that Your Lordship has the jurisdiction in order

to make this order." *Id.* at 14–15. Counsel then exhorted the BVI court by specifically invoking

section 43: "You have the power under section 43 of the Act to grant these interim measures *and*

*that's the end of it." Id.* at 16 (emphasis added). Notably, counsel did not mention, in the

hearing, Cap 80 or any other basis on which the BVI court could have found jurisdiction. And

MD's position necessarily entailed representing to the BVI court that the arbitral award could be

enforced in the BVI. MD's bid to renounce its central reliance on Section 43 as the heart of its

jurisdictional argument, or to urge that the BVI court *sub silentio* disdained Section 43 in favor

of an alternative ground that it did not identify, is, the Court finds, quite unpersuasive.[4]

Finally, MD argues that defendants cannot show prejudice based on the asset-freezing

order. MD urges that defendants could show prejudice only if they argue that they had intended,

but for the freeze, to dissipate assets or act inconsistent with the freeze. MD Resp. at 14.

---

[4] The case law does not require defendants to establish, beyond a reasonable doubt, that the BVI
court adopted wholesale MD's Section 43 argument as to jurisdiction to establish the "adoption"
element of judicial estoppel. *See Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d
387, 399–400 (S.D.N.Y. 2012) (noting "the precise meaning of 'adopted' is not well settled" and
collecting cases). Nor need the prior court have reached an outcome "fully favorable to the party
to be estopped." *Morgan Art Found. Ltd. v. Brannan*, No. 18 Civ. 8231 (AT) (BCM), 2020 WL
469982, at *16 (S.D.N.Y. Jan. 28, 2020). Rather, the Court considers whether, in light of MD's
position in the present proceeding that the award may be enforced only in New York, the BVI
court would have found misleading MD's statements to it that the award was capable of
enforcement in the BVI. *See New Hampshire*, 532 U.S. at 750. For the reasons above, the Court
is constrained to answer yes.

That argument, too, is unpersuasive. At the outset, a showing of prejudice is not automatically required for judicial estoppel to apply. As the Second Circuit has stated: "We have . . . often, but not always, required a showing that the party asserting the two inconsistent positions would derive an unfair advantage against the party seeking estoppel." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019). "This is consistent with *New Hampshire*'s admonishment that the application of the judicial estoppel doctrine depends heavily on the specific factual context before the court." *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (cleaned up); *see also, e.g., In re Adelphia Recovery Tr.*, 634 F.3d 678, 698–99 (2d Cir. 2011) ("[A]lthough a court is unlikely to be asked to apply judicial estoppel when no party has been prejudiced, it is unfair *advantage* to the potentially prejudiced party's adversary that is the touchstone of the doctrine.") (emphasis in original). The Second Circuit has directed courts instead to "inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of" invoking judicial estoppel. *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir. 2018) (quoting *New Hampshire*, 532 U.S. at 751).

Here, the Court finds this standard met. Viewing the freeze order as based on a legal position regarding Section 43 that MD now abjures, defendants were unfairly disadvantaged by the institution of two emergency relief measures against them. The first, from the BVI court, resulted in a lengthy freeze of its assets—inherently a consequential event. The second, the filing injunction issued by this court, has since May 27 severely limited defendants' range of motion to attempt to enforce the arbitral award they won. It would undermine judicial integrity to enable a party to seek, and receive, two rounds of significant emergency relief against its adversary where these were based on incompatible legal theories.

10

The Court accordingly dissolves its prior grant of injunctive relief to MD. The Court is persuaded, based on defendants' showing in their most recent round of briefs, that MD was judicially estopped from taking the position before this Court that the arbitral award could be enforced only in New York. For this Court to maintain the emergency relief it entered would offend this doctrine and give MD an unfair advantage.

In so holding, the Court does not, at all, repudiate its considered reading of the forum selection clause, which formed the basis of its grant of injunctive relief. This Court's view is that MD's position before this Court, as opposed to before the BVI court, as to the enforceability of the award outside New York was correct. But the doctrine of judicial estoppel carries the day. It persuades the Court that it must set aside the broad filing injunction pursued here by MD on a contrary premise. In the event that MD later invokes the forum selection clause in an effort to block an attempt by defendants to enforce the award outside of New York, it will be for a court or arbitrator of competent jurisdiction to determine for itself how that clause is best read, and whether judicial estoppel would bar its enforcement in the context at hand. *See Donnay USA Ltd. v. Donnay Int'l S.A.*, 705 F. App'x 21, 26 (2d Cir. 2017) (summary order) (concluding "that judicial estoppel is inapplicable here and, thus, cannot bar defendants from seeking enforcement of the forum selection clauses").

The Court accordingly, based on the doctrine of judicial estoppel, dissolves the filing injunction it earlier ordered. *See New Hampshire*, 532 U.S. at 749 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . . This rule . . . generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (cleaned up).

12

Within one week of this order, the parties are directed to file a joint letter on the docket of this case as to next steps, if any, in the litigation before this Court.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: July 22, 2022
          New York, New York